990 F.2d 1377
 143 L.R.R.M. (BNA) 2936, 301 U.S.App.D.C. 107
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
SYNERGY GAS CORPORATION, a Wholly Owned Subsidiary of
Synergy Group, Inc., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Building Material Teamsters Local 282, Intervenor.
 No. 92-1077.
 United States Court of Appeals, District of Columbia Circuit.
 April 6, 1993.
 
 Before: RUTH B. GINSBURG, WILLIAMS and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This review petition was considered on the record from the National Labor Relations Board (Board) and on the briefs and oral argument of counsel. The court is satisfied that appropriate disposition of the case does not warrant an opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED that the petition for review be denied and that the Board's Order be enforced in full.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b).
 
 MEMORANDUM
 
 4
 In a January 15, 1992 Decision and Order, the National Labor Relations Board (NLRB or Board) determined that Synergy Gas Corporation (Synergy) had violated Section 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5), by refusing to bargain with its employees' certified representative. Synergy justifies its refusal to bargain on the ground that the election process and ensuing certification were improper. Synergy, however, has not "demonstrate[d] that the conduct complained of interfered with the employees' exercise of free choice to such an extent that it materially affected the election." C.J. Krehbiel v. NLRB, 844 F.2d 880, 882 (D.C.Cir.1988) (citing Amalgamated Clothing & Textile Workers v. NLRB, 736 F.2d 1559, 1564 (D.C.Cir.1984)). Nor has Synergy presented facts indicating a prima facie case of objectional conduct of the kind that would warrant an evidentiary hearing. See NLRB v. Chicago Tribune Co., 943 F.2d 791, 794-95 (7th Cir.1991), cert. denied, 112 S.Ct. 2301 (1992).
 
 
 5
 The Board reasonably chose to hold a mail election: the eligible employees worked disparate shifts, reported to five different locations, and many spent little time on the employer's premises. Synergy's own counsel suggested this procedure. Forty-one of the approximately fifty-six eligible voters cast ballots. Twenty-two voted for the union, fourteen voted against the union, and five ballots were challenged. It is the Board's practice to certify election results "where all eligible voters have an adequate opportunity to participate in the election, notwithstanding low voter participation," for "[t]he law does not compel any employee to vote, and the law should not permit that right, to refrain from voting, to defeat an otherwise valid election." Lemco Constr., 283 N.L.R.B. 459, 460 (1987).
 
 
 6
 The Board was justified in concluding that neither the late receipt of a few ballots nor the handful of employee comments submitted by Synergy revealed any substantial inadequacy in the balloting procedure. Most of the commenting employees mailed in ballots. Three ballots received late were mailed only one or two days before the clearly announced deadline. Two employees who obtained their voting kits less than a week before the deadline returned their ballots in time.
 
 
 7
 The Board did not compromise the election fatally by sending four duplicate ballots to employees at addresses supplied by the union without notice to Synergy. No Board rule barring ex parte contact was broken. See Reply Brief at 13. None of the duplicate ballots were cast. Synergy argues that employees may have construed as employer misconduct possible errors in the original company-supplied addresses. That speculation, however, is wholly unsubstantiated on the record before us.
 
 
 8
 Synergy's challenge to the Board's use of a receipt deadline for ballots is not properly tendered to the court in the first instance. Absent extraordinary circumstances, we may not entertain arguments not previously presented to the Board. See 29 U.S.C. § 160(e) (1988); Woelke & Romero Framing v. NLRB, 456 U.S. 645, 666 (1982). Synergy knew before the election that the NLRB would follow the receipt rule. As Synergy itself observed, under a receipt rule, ballots received after the deadline "are bound to occur and not infrequently." Brief for Synergy at 36. Had Synergy objected to this process rule from the start, it could have supplemented its objection by uncovering, immediately post-election, any ballots that in fact came in late. The alleged cause to hold back the objection is thus unpersuasive.
 
 
 9
 We similarly do not address the different standards Synergy suggests for overturning an election or requiring a hearing. See Reply Brief at 6-14. These were neither argued to the Board nor mentioned in Synergy's opening brief on appeal. See Herbert v. National Academy of Sciences, 974 F.2d 192, 196 (D.C.Cir.1992).
 
 
 10
 In sum, we are entirely satisfied that the Board's decision is "supported by substantial evidence and conform[s] with Board precedent." C.J. Krehbiel, 844 F.2d at 882 (election valid); see Chicago Tribune, 943 F.2d at 795 (hearing not required).